1 | **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joan Cutler,<br><br>               Plaintiff,<br><br>v.<br><br>Andrew Saul,<br><br>               Defendant. | No. CV-18-00353-TUC-LCK<br><br>**ORDER** |

Plaintiff Neal Mendick filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) Before the Court are Plaintiff's Opening Brief, Defendant's Responsive Brief, and Plaintiff's Reply. (Docs. 19-21.) After Mendick died, in November 2018, his mother Joan Cutler was substituted as Plaintiff. (Doc. 23.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 12.) Based on the pleadings and the administrative record, the decision of the Commissioner is affirmed.

**PROCEDURAL AND FACTUAL HISTORY**

Mendick filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in March 2014. (Administrative Record (AR) 257, 266.) He alleged disability from August 2013. (*Id.*) Mendick's application was denied upon initial review (AR 94-128) and on reconsideration (AR 130-63). A hearing was held on December 15, 2016. (AR 47-93.) Subsequently, the ALJ found that Mendick was not disabled. (AR 29-38.) The Appeals Council denied Mendick's request for review. (AR 2.)

Mendick was born in 1960 and was 53 years of age at the onset date of his alleged disability. (AR 257.) Mendick had past relevant work experience as a home builder and a restaurant cook. (AR 284.) The ALJ found that Mendick had a severe impairment of bladder cancer. (AR 32.) The ALJ determined Mendick had the Residual Functional Capacity (RFC) to perform a reduced range of medium work, could only occasionally climb ladders/ropes/scaffolds; but could frequently use ramps/stairs/step-stools, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to fumes. (AR 34.) The ALJ concluded at Step Four, based on the testimony of a vocational expert, that Mendick could perform his past relevant work as a cook. (AR 37.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims.[1] 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42

---

[1] When requesting substitution of Mendick's mother as Plaintiff, counsel acknowledged that Cutler could continue as Plaintiff only as to Mendick's Title II DIB claim but not for his Title XVI claim to SSI benefits. (Doc. 22 (citing 20 C.F.R. § 404.503(b)(3).) Thus, the Court adjudicates only Mendick's DIB claim.

U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Plaintiff argues the ALJ committed two errors: (1) he failed to provide clear and convincing reasons for rejecting Mendick's symptom testimony; and (2) he failed to properly weigh the opinion of examining physician Dr. Jerome Rothbaum.

**Mendick's Symptom Testimony**

Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject Mendick's symptom testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring

specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Mendick had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 35.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Mendick's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

In April 2014, Mendick completed an Exertional Daily Activities Questionnaire in which he stated that he took a daily walk, limited to two miles due to leg pain, and it took about 2 hours; he experienced all the symptoms listed on the form – pain, fatigue, weakness, dizziness, nausea, diarrhea, fevers, shortness of breath, and medication side-effects (AR 303); he could carry at most 25 pounds; he grocery shopped once per month; he cleaned his own home but it was difficult due to pain, dizziness, and shortness of breath; he required rest during the day (AR 304); and he had been referred for further bladder cancer surgery but he was not on any medication (AR 305).

At the 2016 hearing, Mendick testified that he stopped working in 2013 due to bladder cancer and bad nerve damage in both legs. (AR 51-53.) He stated the nerve damage had worsened but he took only aspirin because he did not want to take "drugs."

(AR 53.) He reported it was hard to sit for the hearing because his legs were "killing . . . they really, really, hurt," and since the cancer he couldn't do anything because of pain everywhere. (AR 66.) He stated he could walk for fifty feet without a break and then would need to rest for at least ten minutes. (AR 67.) He could sit or stand for approximately 15 minutes at a time. (AR 68.) He stated that, since the cancer, he could lift a maximum of fifteen pounds with each arm. (AR 68-69.)

The ALJ discounted Mendick's symptom testimony because physical examinations were normal; the bladder cancer required no further treatment and was not causing any current symptoms; his complaints of leg pain did not correspond to any objective findings; Mendick was able to complete housework and could walk two miles; his testimony denying drug and alcohol use was inconsistent with record evidence; the record evidenced long gaps in treatment; he received conservative treatment; and he was never prescribed or obtained physical therapy. (AR 35-38.)

First, the ALJ cited the curing of Mendick's bladder cancer without ongoing symptoms. Mendick attributed his bodily pain to his cancer; however, no records connecting his pain with his cancer or treatment thereof. All records indicate Mendick's bladder cancer, although it recurred, did not cause long-term ongoing symptoms. (AR 370, 421, 719, 723, 726, 766, 771, 775.) Evidence of effective treatment may support an ALJ's rejection of symptom allegations. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for benefits). This was a clear and convincing reason to reject Mendick's symptom testimony.

Second, the ALJ cited gaps in treatment and conservative treatment. If a claimant obtains only conservative treatment and does not seek more aggressive treatment, that can provide a clear and convincing reason to discount his symptom testimony. *Tomasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); SSR 16-3p ("if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment

that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). However, it is not valid to discount a claimant's testimony if there is an explanation as to why more aggressive treatment was not pursued. *See Carmickle v. Comm., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. . . . we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case.")

Pain, particularly "nerve" pain in his legs, was the limitation Mendick cited as the primary reason he could not work. Mendick reported pain to his oncologists and urologists, and during visits to the emergency room, but sought little treatment for pain. Over the course of three years (August 2013 to June 2016), there are only four records documenting Mendick seeing a primary care doctor, all in 2014. During those visits, Mendick reported various types of pain: January—sciatica and leg burning (AR 436, 438), February—knee pain (AR 428), March—back and leg pain (AR 368, 422), and November—abdominal pain (AR 406). Doctors referred him to neurology (AR 440), the pain clinic (AR 424), vascular surgery, and internal medicine (AR 369). Mendick testified to receiving "all kinds of referrals," including to a pain clinic (AR 63), but there are no records reflecting appointments with those specialists. There is substantial evidence to support the ALJ's finding that Mendick had gaps in treatment and pursued only conservative treatment.

Plaintiff points to no record evidence that explains Mendick's failure to pursue treatment for pain or the gaps in treatment with his primary care doctor. *See Sperry v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01484-PHX-JAT, 2019 WL 1513203, at *7 (D. Ariz. Apr. 8, 2019) ("SSR 16-3p does not explicitly require the ALJ to ask the claimant at the hearing why he or she has failed to continue treatment. Rather, an ALJ may permissibly discount a claimant's testimony if a review of the record suggests that "[a]n

individual's symptoms [were] not [ ] severe enough to prompt him or her to seek treatment[.]"). At the hearing, Mendick testified that he only took aspirin for pain because he did not want to take "drugs." (AR 53.) In fact, his primary care doctor declined to prescribe narcotics after Mendick tested positive for amphetamines. (AR 424, 430, 450.) Further, the record reflects that Mendick repeatedly requested and/or received narcotic medication from his primary care doctor, his urologist, and at emergency room visits. (AR 381, 383, 410, 422, 428, 436, 440, 463, 471, 478-79, 506, 647, 710, 721, 724, 728.) Thus, Mendick's explanation for not taking prescription pain medication was contradicted by the record. Mendick did not request or try other treatment options for pain, such as physical therapy or visiting the referred specialists.

The Court found no record evidence of an explanation for Mendick's failure to seek treatment for pain, such as financial limitations. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (finding if claimant has an inability to pay or treatment is unlikely to provide relief then ALJ should not discount symptom testimony for lack of treatment) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Mendick's limited treatment for pain was a clear and convincing reason to discount his symptom testimony as to the severity of his pain. *See id.* (noting that failure to seek treatment for pain may be probative because a person typically seeks relief from pain and relief is often available).

Finally, the ALJ cited normal physical exams and no objective findings to support Mendick's reported leg pain. Other than symptoms related to Mendick's bladder cancer, which were resolved on treatment, Mendick had repeated physical exams that were essentially normal, including a normal gait. (AR 372, 383, 409, 413, 423, 439-40, 463, 646, 713, 716, 720, 727, 772, 775, 778.) There are limited exceptions in the record: an x-ray documenting degenerative disc disease (AR 452); three exams revealed low back pain with motion and tenderness to palpation in the area (AR 423, 440, 471); and, in November 2014, Mendick exhibited abdominal tenderness and a positive test for hip or SI joint pathology (AR 410). Although there are a few objective findings of abnormality, "the key question is not whether there is substantial evidence that could support a finding

of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). There is substantial record evidence to support the ALJ's finding of normal exams and lack of objective evidence to support Mendick's leg pain. *See Valentine v. Comm'r Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Burch*, 400 F.3d at 680–81 (9th Cir. 2005) (quoting *Magallanes*, 881 F.2d at 750) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ."). Further, Plaintiff did not contest the ALJ's conclusion regarding objective findings. (*See* Doc. 19 at 8.)

The Court identified three valid grounds cited by the ALJ to find Mendick's symptom testimony not fully credible. The Court finds they are supported by substantial evidence and satisfy the clear and convincing standard. Because these reasons are enough to affirm the ALJ's finding, the Court does not reach the remaining grounds upon which the ALJ relied. *See Carmickle*, 533 F.3d at 1163 (upholding ALJ credibility finding based on multiple valid reasons even though other reasons were legally erroneous).[2]

**Medical Opinion of Examining Physician Dr. Jerome Rothbaum**

Mendick argues the ALJ erred in rejecting a portion of the opinion of examining physician Dr. Jerome Rothbaum without a valid basis. The opinion of an examining physician is generally afforded more weight than a non-examining or reviewing

---

[2] The ALJ also discounted Mendick's symptom testimony based on inconsistencies between his testimony and other record evidence regarding his use of drugs and alcohol. Because this was unrelated to Mendick's testimony regarding his pain and other symptoms, the ALJ's reliance on those inconsistencies was error under SSR 16-3p. *See Martinez v. Berryhill*, 721 F. App'x 597, 600 (9th Cir. 2017) (ALJ erred in relying upon insistencies in the record unrelated to the symptom testimony); *Walsh v. Comm'r of Soc. Sec. Admin.*, No. CV-15-02466-PHX-GMS, 2017 WL 1130366, at *10 (D. Ariz. Mar. 27, 2017) (general impeachment based on a claimant's inconsistent statements about use of drugs is not permitted under SSR 16-3p). The Court notes this finding of error, although not necessary to its conclusion, because it is likely to arise again, and Defendant argued it was not error. (Doc. 20 at 10.)

physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of Dr. Rothbaum was contradicted by that of reviewing physicians Drs. Mansour and Fahlberg, who found Mendick could perform a range of medium exertion work. (AR 125-26, 159-61.) When there are contradictory medical opinions, to reject an examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

In October 2014, Dr. Rothbaum opined that Mendick could occasionally lift 20 pounds, and frequently lift 10 pounds; stand and/or walk up to 4 hours in a day (30 minutes at a time); sit for an unlimited period; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but never climb ladders/ropes/scaffolds. (AR 391-93.) His conclusions were based primarily on Mendick's COPD, which the doctor tested and classified as mild.[3] (AR 392, 395.) The ALJ determined Dr. Rothbaum's limitation to light exertion was not supported by the normal physical findings in the record; the ALJ also relied on Dr. Fahlberg's opinion that Mendick could do medium-exertion work. (AR 35-36.)

Dr. Rothbaum's respiratory exam documented percussion moderately hyperresonant particularly at the bases, expansion diminished at the bases, and amplitude of breath sounds markedly diminished. (AR 390.) The only other abnormal respiratory findings in the record are limited: in January 2014, a chest x-ray documented emphysema and a nodule in Mendick's right lung, which was confirmed with a CT scan (AR 374, 451); and, on March 28, 2014, a doctor recorded distant breath sounds and crackles upon exam (AR 368). In contrast, as discussed above, numerous treating doctors documented that Mendick's examination results over the course of three years were essentially

---

[3] Plaintiff contests the ALJ's statement that Dr. Rothbaum's testing revealed Mendick's post-bronchodilator FEV-1 was 97%. (Doc. 19 at 9-10 (citing AR 32).) The Court acknowledges that percentage is not included on the pulmonary function test results submitted by Dr. Rothbaum. (AR 396-97.) Regardless, Dr. Rothbaum did not highlight or discuss specific number results from the test. Rather, he summarized that Mendick's FVC was normal and his FEV1 and the ratio of FEV1/FVC were mildly reduced, which established a mild obstructive defect. (AR 395, 397.)

normal, including normal respiratory exams. (AR 372, 383, 409, 413, 439, 463, 471, 481, 646, 713, 716, 720, 727, 772, 775, 778). Additionally, the remainder of Dr. Rothbaum's examination was normal, including Mendick's heart, peripheral vascular system, reflexes, range of motion, and strength, and Mendick walked with a normal gait, was able to dress and undress, and get up and down with no difficulty. (AR 390.) The ALJ noted that Mendick reported to Dr. Rothbaum an ability to walk up to two miles, despite no medication for COPD, and he had experienced no hospitalizations or oxygen therapy due to COPD. (AR 32 (citing AR 388-89).)

The ALJ relied on, not only the opinion of non-examining physician Dr. Fahlberg, but also the normal exams of numerous doctors and the fact that Dr. Rothbaum's exam was normal in most respects. (AR 35-36.) This was a specific, legitimate reason to discount Dr. Rothbaum's opinion and it is supported by substantial evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 605 (9th Cir. 1999) (finding it proper to discount an examining physician's opinion based on a non-examining medical advisor when there are conflicting exams from other physicians).

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). The Court concludes the ALJ did not err as to the claims raised by Plaintiff. Therefore, Plaintiff is not entitled to relief and the appeal is denied.

Accordingly, **IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

Dated this 16th day of August, 2019.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge